UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALI RICHARD,<br>    *Plaintiff*,<br><br>v.<br><br>MARTIN, CORCELLA, SCOTT SEMPLE,<br>COTTA, NUNEZ, DONOVAN, WILLIAMS,<br>BELLEMARE, OCASIO, RODRIGUES,<br>KING, WITOWSKI, PUDVAH, SPOTTEN,<br>and WRIGHT,<br>    *Defendants*. | Case No. 3:20-cv-1354 (CSH)<br>July 18, 2023 |

## RULING ON DEFENDANTS' MOTION TO DISMISS

**HAIGHT, Senior District Judge:**

*Pro se* plaintiff Ali Richard, currently incarcerated at Brooklyn Correctional Institution, filed a complaint on September 10, 2020 pursuant to 42 U.S.C. § 1983 against fifteen defendants. Following initial review, six defendants remain: Captain Williams, Captain Bellemare, Lieutenant Ocasio, Correctional Officer Rodrigues, Property Officer Witowski, and Property Officer Pudvah.

By Initial Review Order filed October 6, 2022, familiarity with which is assumed, the Court dismissed the Amended Complaint in part. *See generally* Doc. 16, available at *Richard v. Martin*, No. 3:20-CV-1354 (CSH), 2022 WL 5246814, at *1 (D. Conn. Oct. 6, 2022). The remaining claims relate to the alleged confiscation of Richard's prayer shawl in 2019 and the alleged confiscation of his prayer shawl and kurta in 2021.

Defendants have filed a motion to dismiss the claims against defendants Williams and Ocasio relating to the alleged confiscation of Richard's prayer shawl in 2019 and all requests for

declaratory relief under RLUIPA.[1] For the reasons that follow, Defendants' motion will be denied, and Richard's request for declaratory relief under RLUIPA will be dismissed as moot.[2]

## I. FACTS[3]

Richard describes himself as a "devout Moorish-American Moslem" who "diligently and sincerely practices the Moorish Science faith called Islamism." Doc. 15 at 8 ¶ 22. On April 14, 2018, Richard submitted a request to Director of Religious Services, the Rev. Dr. Williams, seeking to purchase a prayer shawl from an outside vendor. *Id.* at 9 ¶ 24. "A prayer shawl is a spiritual scarf used in prayers and meditation to offer spiritual protection and to deepen the faith experience. It is an essential component to Moslems of the Moorish Science Temple." *Id.* ¶ 25. Director Williams approved the request to purchase a prayer shawl on April 17, 2018, and Richard ordered the shawl shortly thereafter. *Id.* ¶¶ 26–27, When the shawl arrived, property officers photographed it, noted it on Richard's property inventory, and called Richard down to pick it up. *Id*. ¶ 28. Richard proceeded to make daily use of the shawl for prayer and meditation. *Id.* ¶ 29.

At some point during August 2019, prison officials transferred Richard to the Corrigan-Radgowski Correctional Center ("Radgowski"). *Id.* ¶ 30. On December 4, 2019, officers conducted

---

[1] The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-2, *et seq*.

[2] Richard filed his opposition to the motion to dismiss on January 4, 2023. Local court rules state that a reply brief "must be filed within fourteen" days from the date the response is filed. D. Conn. L. Civ. R. 7(d). Defendants filed their reply brief on April 26, 2023, well out of time. Defendants did not file a motion seeking leave to file the reply brief out of time. Instead, in the brief, they merely state that the reply was timely drafted but never filed and ask the Court to consider the arguments therein. Richard objects to consideration of the reply brief as it was untimely filed. The Court has conducted its own review of the issues raised in the motion to dismiss and does not rely on Defendants' reply brief.

[3] The Court includes only those facts, taken from the amended complaint, relevant to the claims sought to be dismissed.

a shakedown of all cells in Radgowski. *Id.* at 10 ¶ 31. Correctional officers entered Richard's dorm and instructed all inmates to put their personal property on their bunks. *Id.* ¶ 32. Richard placed all his property, including his prayer shawl, on his bunk. *Id.* Correctional officers escorted all inmates, including Richard, to the gymnasium to be strip-searched. *Id.* ¶ 33. Upon returning to his cell, Richard found his belongings in disarray and doused in some type of liquid. *Id.* at 11 ¶ 35. Also, his prayer shawl was missing. *Id*. ¶ 36. Although Richard was not present when his cell was searched, he expresses certainty that a particular officer—Correctional Officer Rodrigues—confiscated his prayer shawl. *Id*. at 23 ¶ 66.

Richard immediately spoke to Lieutenant Ocasio about his missing prayer shawl. *Id.* at 11 ¶ 37. Lieutenant Ocasio said that he did not think a prayer shawl was important and that a missing prayer shawl was not his problem. *Id*. Richard stated that he wanted his prayer shawl back, that it was of great religious value to him, and that, if necessary, he would exhaust his legal remedies. *Id.* Lieutenant Ocasio simply said, "[M]ake sure you spell my name right." *Id.* Richard spoke with two correctional officers in his housing unit, one of whom instructed him to speak to a captain about his missing prayer shawl. *Id*. at 11-12 ¶ 38. When Captain Williams entered Richard's dorm, Richard explained that his prayer shawl had been confiscated during the search of his cell and that he had not received any documentation indicating the basis for the confiscation. *Id.* at 12 ¶ 39. Captain Williams said that it was not his problem and walked away. *Id.*

## II. STANDARD OF REVIEW

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although detailed factual allegations are not required, *Keller v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014), mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient, *Twombly*, 550 U.S. at 555. Plaintiff must, at a minimum, "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a plaintiff has met this standard, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the light most favorable to the nonmoving party. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same); *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court

4

must assume the truth of the allegations, and interpret them liberally to raise the strongest arguments [they] suggest[]."). Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). The Court may not "invent factual allegations" that the plaintiff has not pleaded. *Id.*

## III. DISCUSSION

Defendants seek to dismiss two claims. First, they argue that Richard fails to allege facts demonstrating the personal involvement of defendants Williams and Ocasio in the 2019 loss of his prayer shawl. Second, they contend that the request for declaratory relief on the RLUIPA claim is not cognizable because it refers only to past actions.

### A. Personal Involvement

Defendants argue that Richard fails to allege facts showing that defendants Williams and Ocasio were personally involved in the alleged confiscation of Richard's prayer shawl. They state that Richard has alleged only that he reported the loss to them after the fact and contend that this is insufficient to demonstrate their involvement in the confiscation or loss of the prayer shawl.

In response to the motion to dismiss, Richard now alleges that defendants Williams and Ocasio were present in the dorm prior to the search and were the officers who instructed the inmates to place all property on their bunks. *See* Doc. 39 at 2. Richard also alleges that they remained

in the dorm instructing the officers during the shakedown and contends that no correctional officer would confiscate property during the shakedown without instruction from or the approval of either defendant. *See id*.

Richard cannot add new facts in his opposition to the motion to dismiss. The court's review is confined to the facts alleged in the amended complaint unless the court elects to convert the motion to dismiss into a motion for summary judgment, an action not taken here. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d. Cir. 2007).

Nor can Richard amend his amended complaint through his memorandum. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff cannot amend complaint through memorandum filed in opposition to dispositive motion); *Purugganan v. AFC Franchising, LLC*, No. 3:20-CV-00360 (KAD), 2021 WL 5301522, at *4 (D. Conn. Nov. 15, 2021) (plaintiff cannot amend complaint through memorandum). Richard could have sought leave of court to file a second amended complaint to address the issues raised in the motion to dismiss but chose not to do so. Thus, in deciding this motion, the Court considers only the facts alleged in the amended complaint.

Defendants Williams and Ocasio are supervisory officials. The Second Circuit has held that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Thus, the Court must determine whether Richard has sufficiently alleged that defendants Williams and Occasion were aware of Richard's rights and failed to take action. *See id*. at 619.

Richard alleges that he spoke to defendant Ocasio immediately upon returning to the dorm

and to defendant Williams shortly thereafter about his missing prayer shawl. Doc. 15 at 11 ¶ 37, 12 ¶ 39. In opposition to the motion to dismiss, Richard relies on *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). In *Colon*, which was decided before *Tangreti* and *Iqbal*, the Second Circuit established five factors that could be used to show the personal involvement of a supervisory official in a constitutional violation:

> (1) the defendant directly participated in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon* 58 F.3d at 873. Richard argues that all five *Colon* factors are met.

Following *Tangreti*, however, the second, fourth, and fifth *Colon* factors are no longer valid ways to establish the personal involvement of a supervisory official. *See Stone #1 v. Annucci*, No. 20-CV-1326(RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (noting district court's rejection of *Colon* factors after *Tangreti*); *see also Morrow v. Vanderwerff*, No. 9:19-CV-555(DNH/DJS), 2022 WL 526218, at *3 (N.D.N.Y. Jan. 6, 2022) ("District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test." (citation omitted)), *report and recommendation adopted*, 2022 WL 523745 (N.D.N.Y. Feb. 22, 2022). Thus, the Court need consider only whether the facts alleged in the Amended Complaint support a claim under the first or third *Colon* factor.

Richard's argument that the first and third factors are met is based on the additional facts included in his opposition papers. As the Court has explained that these facts are not part of the

Amended Complaint, Richard cannot show that defendants Williams and Ocasio directly participated in the loss or confiscation of his prayer shawl or created a policy governing the search that led to the loss of his prayer shawl.

Defendants correctly argue that mere awareness of an issue is no longer sufficient to state a claim for supervisory liability. "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution." *Tangreti,* 983 F.3d at 616-17 (quoting *Iqbal*, 556 U.S. at 677)). In support of their position, Defendants analogize Richard's conversations with defendants Williams and Ocasio with the receipt of and failure to investigate or act on a letter or grievance. "[A]s a matter of law, a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement." *Evans v. Barone*, No. 3:22CV00074(SALM), 2022 WL 408920, at *6 (D. Conn. Feb. 10, 2022) (citation and internal quotation marks omitted). In *Evans*, the court dismissed the claim for supervisory liability because the plaintiff merely alleges that he had written to the defendant supervisors; he had not even alleged that they had received his letters. *Id.* Here, however, Richard did not merely send letters to defendants Williams and Ocasio, he spoke with each of them immediately after the search. Thus, at the time of the conversations, each defendant was aware of Richard's complaint of the loss of a religious item.

Defendants also refer the Court to a district court case to support their argument that a verbal complaint is insufficient to establish personal involvement. *See Oh v. Saprano*, No. 3:20-cv-237(SRU), 2020 WL 4339476 (D. Conn. July 27, 2020). In *Oh*, the court found a verbal complaint to the Commissioner of Correction insufficient to support his personal involvement and held that "[t]o hold [high-ranking supervisory officials] liable on a mere complaint by an inmate, even

8

a verbal one, would raise the same problems stemming from liability from letters" alone. *Id.* at \*6 (citation and quotation marks omitted). Although as a captain and lieutenant, defendants Williams and Ocasio are supervisory officials, they are not high-ranking officials. Thus, while the courts may excuse the failure to act in response to a verbal complaint for a commissioner, warden, or officer of similar rank, *Oh* does not support Defendants' contention that they would do so for lower-ranking supervisory officials.

In addition, the courts are divided on whether the failure to remedy a violation can support a personal involvement claim after *Tangreti*. *See, e.g.*, *Verdi v. Farah*, No. 9:22-CV-0825 (BKS/CFH), 2022 WL 4236401, at \*7 (N.D.N.Y. Sept. 14, 2022) (assuming that *Tangreti* did not eliminate all supervisory liability under a failure-to-remedy theory); *but see, e.g., Wood v. Dill*, No. 9:21-CV-0107(GTS/ML), 2022 WL 18402298, at \*8 (N.D.N.Y. Nov. 29, 2022) ("the failure to remedy unconstitutional conduct by others is insufficient to constitute personal involvement following the Second Circuit's decision in *Tangreti* . . . ."), *report and recommendation adopted*, 2023 WL 356166 (N.D.N.Y. Jan. 23, 2023).

Richard alleges that he told both defendants that his prayer shawl was missing, and he emphasized to defendant Ocasio that the shawl was a significant religious item. Insofar as Richard is claiming that the prayer shawl *had been* taken or confiscated by the time of his complaints to defendants Williams and Ocasio, then their failure to take any action on this *past* violation may not state a cognizable claim. *See Verdi v. Farah*, No. 9:22-CV-0825(BKS/CFH), 2022 WL 4236401, at \*7 (N.D.N.Y. Sept. 14, 2022) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y.

9

2008)).

However, insofar as Richard asserts that without the prayer shawl, his right to freely exercise his religion would be impinged going forward, then the refusal of defendants Williams and Ocasio to take any action on this ongoing constitutional violation contributed to the constitutional violation. As Richard's claims appear to include the latter assertion, at this time, the motion to dismiss is denied on this ground. Defendants may revisit this argument should further development of the record indicate that Richard's claim is focused only on the loss of the prayer shawl.

### B. Declaratory Relief under RLUIPA

Defendants move to dismiss the request for declaratory relief under RLUIPA, the only remaining RLUIPA claim. In opposition, Richard states that he has remaining claims for violation of RLUIPA and for declaratory relief under RLUIPA. Richard is mistaken. As the Court explained in the Initial Review Order, the Second Circuit has held that "RLUIPA 'does not authorize monetary damages against state officers in either their official or individual capacities.'" Doc. 16 at 15 (quoting *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014)). Thus, Richard may obtain only injunctive or declaratory relief as a remedy for his alleged RLUIPA violations. *See Booker v. Graham*, 974 F.3d 101, 107-08 (2d Cir. 2020) ("RLUIPA provides only for injunctive and declaratory relief when a prison violates an inmate's religious rights."). The Court noted that Richard does not request injunctive relief in the Amended Complaint. Thus, the only RLUIPA claim is the request for declaratory relief.

Defendants move to dismiss that claim because Richard seeks only a statement that his rights were violated in the past. The Second Circuit has not addressed whether a request for de-

claratory relief relating only to past actions is permissible under RLUIPA. Courts within the Second Circuit, however, have determined that it is not. *See, e.g., Shakur v. Elders*, No. 3:19-CV-1412(VAB), 2021 WL 4711484, at *6 (D. Conn. Oct. 8, 2021) (dismissing claim seeking declaration that defendants violated plaintiff's rights under the First, Eight, and Fourteenth Amendments and RLUIPA in the past); *Mateo v. Westchester Cnty.*, No. 18-CV-03499(NSR), 2020 WL 5802838, at *5 (S.D.N.Y. Sept. 29, 2020) ("[S]ince absent a request for prospective relief, the Eleventh Amendment bars declaratory relief in the form of a statement that Plaintiff's constitutional right has been violated in the past, [Plaintiff's] only available relief under RLUIPA is injunctive relief.").[4]

The Court need not decide this issue because, even if the request for declaratory relief for past actions is cognizable, courts consistently dismiss such requests where the inmate is no longer confined at the facility where the offending conduct occurred. *See, e.g., Booker*, 974 F.3d at 107–08 (RLUIPA claims for declaratory and injunctive relief are moot because prisoner transferred out of facility where violations occurred); *Washington v. McKoy*, 816 F. App'x 570, 572–73 (2d Cir.

---

[4] Some districts in other circuits have reached the opposite conclusion. In *Sossaman v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that RLUIPA does not permit damages awards against the states. However, the Court phrased this holding narrowly, stating that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA." *Id.* at 293. In dissent, Justice Sotomayor characterized this statement as an "implicit acceptance of suits for injunctive and declaratory relief" against states for violations of RLUIPA. *Id.* at 298 (Sotomayor, J., dissenting). In *Muhammad v. Crews*, No. 4:14CV379-MW/GRJ, 2016 WL 3360501 (N.D. Fla. June 15, 2016), the court noted that this "implicit acceptance" supports an argument that the state "has waived its immunity to suit for declaratory relief under RLUIPA even when that declaratory relief pertains to wholly past violations of the statute." *Id.* at *5. At least one court has liberally interpreted a request for declaratory relief based on past actions to include a prohibition against similar future conduct. *See Muhammad v. Inch*, No. 3:18-CV-212-J-25JBT, 2020 WL 13518236, at *3 (M.D. Fla. Mar. 10, 2020) (considering request for declaration that past actions violated rights under RLUIPA to encompass request to deter similar action in future).

2020) (district court properly granted summary judgment on RLUIPA claims because claims mooted by prisoner's transfer); *Baltas v. Erfe*, No. 3:19CV1820(MPS), 2020 WL 1915017, at *17 (D. Conn. Apr. 20, 2020) (dismissing RLUIPA claims for declaratory and injunctive relief because plaintiff had been transferred out of state); *Turner v. Sidorowicz*, No. 12-CV-7048(NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016) (dismissing RLUIPA claim for declaratory and injunctive relief because plaintiff is no longer incarcerated at facility where alleged violations occurred).

The incidents underlying Richard's RLUIPA claims occurred at Radgowski. He did not file this action until after he was transferred to Brooklyn Correctional Institution, where he currently is incarcerated. As Richard has been transferred, his request for declaratory relief relating to incidents at Radgowski is moot. Richard's request for declaratory relief will therefore be dismissed, and Defendants' motion to dismiss on this ground will be denied as moot.

## IV. CONCLUSION

Defendants' motion to dismiss [Doc. 28] is DENIED without prejudice to Defendants revisiting these issues at a later stage of litigation. Richard's request for declaratory relief on his RLUIPA claim is DISMISSED as moot.

It is SO ORDERED at New Haven, Connecticut, this 18th day of July 2023.

*/s/ Charles S. Haight, Jr.*

CHARLES S. HAIGHT, JR.
Senior United States District Judge