UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALI RICHARD )<br>*Plaintiff*, )<br> )<br>v. )<br> )<br>MARTIN, *et al*, )<br>*Defendants*. ) | CASE NO. 20-cv-1354 (KAD)<br><br><br><br><br>December 31, 2025 |

<u>**MEMORANDUM OF DECISION**</u>
**RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 78)**

Kari A. Dooley, United States District Judge:

Plaintiff Ali Richard, a convicted state prisoner, filed this civil rights action *pro se*[1] under 42 U.S.C § 1983 and under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1, against Wardens Martin and Corcella; Commissioner Semple; Deputy Wardens Nunez and Cotta; Captains Donovan, Williams, and Bellemare; Lieutenant Ocasio; Correctional Officer Rodriguez; Grievance Coordinator Officer King; Property Officers Witowski[2] and Pudvah; and Freedom of Information Act Officers Spotten and Wright. Plaintiff alleged that each of the defendants violated his federally protected rights in connection with the alleged confiscation of his prayer shawl on or about December 4, 2019. Plaintiff further contends that Property Officer Pudvah again violated his rights by confiscating his Kurta shirt on or about September 26, 2021.

The Court conducted an initial review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A. The Court allowed the following claims to proceed with regard to the alleged confiscation of Plaintiff's prayer shawl in 2019: (1) Plaintiff's First Amendment free exercise

---

[1] The Court later appointed pro bono counsel, who appeared on April 11, 2024. *See* Notice, ECF No. 55.

[2] Throughout the docket, defendant is frequently referred to as both "Witkowski" and "Witowski." *E.g.*, Mot. for Sum. J., ECF No. 78-1 at 2; *id*.

claim asserted against defendants Rodriguez, Witowski, Pudvah, Ocasio, Bellemare, and Williams in their individual capacities; (2) Plaintiff's First Amendment retaliation claim asserted against defendants Pudvah and Bellemare in their individual capacities; and (3) Plaintiff's claims asserted under RLUIPA to the extent he sought declaratory relief. With regard to the alleged confiscation of Plaintiff's Kurta shirt[3] in 2021, the Court allowed the following claims to proceed: (1) Plaintiff's First Amendment free exercise claim asserted against defendant Pudvah in his individual capacity; (2) Plaintiff's First Amendment retaliation claim asserted against defendant Pudvah in his individual capacity; and (3) Plaintiff's official-capacity claims under RLUIPA to the extent Plaintiff sought declaratory relief. *See* IRO, ECF No. 16 at 37.[4]

Defendants filed a motion to dismiss. *See* Mot. to Dismiss, ECF No. 28. The Court dismissed as moot Plaintiff's claims asserted under RLUIPA and denied without prejudice the remainder of the motion. *See* Mot. to Dismiss Ruling, ECF No. 51 at 12. Because the underlying incidents pertaining to the RLUIPA claim occurred at Radgowski Correctional Institution, and Plaintiff had been transferred to Brooklyn Correctional Institution prior to filing this action, the claim for declaratory relief under the RLUIPA was moot. *See id*. As a result, only Plaintiff's First Amendment free exercise and First Amendment retaliation claims relating to the alleged confiscation of Plaintiff's prayer shawl in 2019 and Kurta shirt in 2021 remain. *Id*. Defendants have now filed a motion for summary judgment as to these remaining claims. *See* Mot. for Sum.

---

[3] The Amended Complaint and the IRO refer to a prayer shawl and a prayer shirt that were missing from Plaintiff's property when he arrived at Brooklyn Correctional Institution in 2021. *See* Am. Compl., ECF No. 15 at ¶¶ 57–58; IRO, ECF No. 16 at 1. Defendants argue, and the Court agrees, that this is a scrivener's error because when deposed, Plaintiff did not mention a second prayer shawl missing from his property along with the prayer shirt; he noted that the only other items missing from his property were "[s]ome small food items, soups and things like that; bowls, a toothpaste. Small things." *See* Mot. for Sum. J., Ex. J, ECF No. 78-12 at 21. The Court thus considers the incidents regarding the missing prayer shawl and the Kurta shirt as two distinct incidents.

[4] Following Initial Review, the following Defendants were terminated: Warden Martin; Warden Corcella; Commissioner Semple; Deputy Warden Cotta; Deputy Warden Nunez; Captain Donovan; Grievance Coordinator King; FOIA Liaison Spotten and FOIA Liaison Officer Wright. *See* IRO, ECF No. 16 at 36–37.

J., ECF No. 78.  Therein, Defendants assert that there is no genuine issue of material fact as to the merits of Plaintiff's claims that any of the defendants confiscated his religious items (or by necessity did so in retaliation for his exercise of his First Amendment rights); Plaintiff failed to exhaust his claims that Witowski, Bellemare, Ocasio, Williams and Pudvah violated his rights when they failed to assist him in his efforts to recover the prayer shawl; and in any event, Defendants are entitled to qualified immunity to the extent they allegedly failed to assist Plaintiff in recovering his prayer shawl.  *See id*.

Upon review of the record submissions, for the reasons that follow, the Court agrees with Defendants.  Defendants' motion for summary judgment, ECF No. 78, is **GRANTED**.

**Background**

Procedural History

On September 10, 2020, Plaintiff Ali Richard filed his initial Complaint.  Compl., ECF No. 1.  On September 16, 2022, he filed an Amended Complaint.  Am. Compl., ECF No. 15.  The Amended Complaint alleged that Defendants violated his civil rights while he was incarcerated by confiscating his prayer shawl and his Kurta shirt.  *Id*.

Following the issuance of the Initial Review Order ("IRO"), ECF No. 16, and the ruling on Defendants' Motion to Dismiss, ECF No, 51, Defendants filed a Motion for Summary Judgment, ECF No. 78; Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 78-1; Local Rule 56(a)(1) Statement of Facts, ECF No. 78-2; and various supporting exhibits, ECF No. 78-3 to 78-21.  In response, Plaintiff filed an Objection to the Motion for Summary Judgment, including various exhibits and a Local Rule 56(a)(2) Statement of Facts.[5]  Obj., ECF No. 79.  On June 23, 2025, Defendants filed a reply.  Reply, ECF No. 80.

---

[5] Although not labeled as an exhibit, Plaintiff's Local Rule 56(a)(2) statement is included in his Objection to the Motion for Summary Judgment.  *See* Obj., ECF No. 79 at 50–55.  Insofar as Plaintiff's Local Rule 56(a)(2) Statement

3

Facts

The relevant facts are taken from the parties' respective Local Rule 56(a)(1) and Local Rule 56(a)(2) Statements and attached exhibits, as well as Plaintiff's Amended Complaint to provide context for Plaintiff's allegations.  All the facts set forth herein are undisputed unless otherwise indicated.

In December 2019, Plaintiff was incarcerated at Radgowski Correctional Institution.[6]  Def. LRS, Ex. 2, ECF No. 78-2 at ¶ 1; Pl. LRS, ECF No. 79 at ¶ 1.  Plaintiff describes himself as member of the Moorish Science Temple of America.  Pl. LRS, Add'l Material Facts at ¶ 2.  In connection with his faith, he possessed a prayer shawl, the purchase and use of which was authorized.[7]  *Id*. at ¶¶ 3–4.  Plaintiff obtained the prayer shawl in observance of his religion and used it regularly.  *Id*. at ¶ 3.

Following a shakedown of the facility on December 4, 2019, Plaintiff found that his prayer shawl was missing.  Pl. LRS at ¶ 2.  Before leaving his cube to allow for a search, Plaintiff alleges he was asked to place all of his property—necessarily including his prayer shawl—on his bunk.  Pl. LRS, Add'l Material Facts at ¶ 6.  It was during this shakedown that the prayer shawl went missing.  Pl. LRS at ¶ 2.  Plaintiff alleges that defendants had exclusive control over Plaintiff's cube and the property therein during the shakedown.  Add'l Material Facts at ¶ 8.

---

includes denials that are not supported by the record evidence, those facts are deemed admitted.  *See, e.g.*, *Buell v. Hughes*, 568 F. Supp. 2d 235, 237 (D. Conn. 2008) (citing D. Conn. L. Civ. R. 56(a); *SEC v. Global Telecom Servs. L.L.C.*, 325 F. Supp. 2d 94, 109 (D. Conn. 2004)) (admitting paragraphs that the nonmoving party denied because the denials did not cite affidavits or evidence, contrary to the Local Rules).

[6] The Radgowski facility closed on October 6, 2021.  *See Dep't of Corr.* https://portal.ct.gov/en/doc/facility/corrigan-radgowski-cc (last visited Dec. 31, 2025).  Plaintiff is presently housed at Osborn Correctional Institution.  *See* Not., ECF No. 81.

[7] Plaintiff was housed at Macdougall Correctional Institution when he purchased the prayer shawl.  The purchase and use of the prayer shawl was authorized by the staff at Macdougall before Plaintiff was transferred; it was also logged on his property matrix.  Am. Compl., ECF No. 15 at ¶¶ 26–28.

4

Defendant Rodriguez was the officer assigned to search Plaintiff's cube. Pl. LRS at ¶20. Plaintiff alleges Defendant Ocasio was also present during the shakedown, although he does not allege that Ocasio took the prayer shawl. Pl. LRS, Add'l Material Facts at ¶ 10.

Defendants assert, citing Plaintiff's deposition testimony, that Plaintiff's belief that Rodriguez was involved in the disappearance of the prayer shawl is based entirely on the fact that Rodriguez was assigned to search Plaintiff's cube and signed documentation indicating he had done so. Def. LRS at ¶ 20. When property is confiscated, there is a policy requiring the confiscating officer to file paperwork and turn in the confiscated item to the property officer. Pl. LRS at ¶ 24. Rodriguez filed no such documentation in this instance but indicated in his declaration that he always files the required paperwork when he confiscates property. *Id*. at ¶ 25; Rodriguez Decl., Ex. 14, ECF No. 78-14 at ¶ 9.

After Plaintiff returned to his cell and realized the prayer shawl was missing, he immediately told Ocasio, who did not assist him. Pl. LRS at ¶ 3. After failing to reach a resolution, Plaintiff raised the matter to Officer Williams who also did not assist him. *Id*. at ¶ 6. Between December 4 and December 6, 2019, Plaintiff wrote several inmate requests regarding the confiscation of his prayer shawl. *Id*. at ¶ 10.

On December 8 or 9, 2019, Plaintiff spoke to Captain Bellemare, who offered him CDs or video game cartridges as recompense for the missing prayer shawl. *Id*. at ¶ 12. Bellemare informed him that, alternatively, he could file a claim for lost property. *Id*. Plaintiff refused to accept other property in lieu of his prayer shawl. On December 10, Plaintiff spoke with Officer Witkowski who, again, offered CDs in exchange for the missing prayer shawl. *Id*. at ¶ 16. Defendants aver that when an inmate has property that is lost or broken, other property may be offered to settle the matter. *Id*. at ¶ 15. The same day, Officer Pudvah called Plaintiff in to speak

5

about the missing prayer shawl. *Id*. at ¶ 18. Plaintiff stated that both Pudvah and Witkowski indicated that they may have seen the prayer shawl at one point but did not know where it was. *Id*. at ¶ 21. No other defendant has indicated they had any knowledge of the whereabouts of the missing prayer shawl or the specific circumstances under which it went missing. *Id*. at ¶ 22.

The second incident of alleged confiscation of an item of religious significance was the disappearance of Plaintiff's Kurta shirt on or about September 16, 2021.[8] Plaintiff also wore the Kurta shirt during prayer and his possession of the shirt was authorized. Pl. Add'l Material Facts at ¶ 11. At that time, Plaintiff was in the process of being moved to a new facility. *Id*. at ¶ 12. Pudvah was the property officer responsible for Plaintiff's property. *Id*. Plaintiff alleges in the Amended Complaint that Pudvah presented Plaintiff with a property sheet to sign, indicating that his property was present. Am. Compl., ECF No. 15 at ¶ 56. Plaintiff initially refused to sign the document as he wanted to be sure all of his property was in the boxes first, but Pudvah refused to unpack and repack them for that purpose. *Id*. Plaintiff reluctantly signed and wrote "without viewing" next to his name. *Id*. When Plaintiff arrived at the new facility, his Kurta shirt was missing. Pl. Add'l Material Facts at ¶ 13. Plaintiff alleges that because Pudvah was the officer who packed his personal effects, he must be the one who confiscated the shirt. Am. Compl. at ¶¶ 58–59. Pudvah denies having any recollection of the Kurta shirt or involvement in its disappearance. *See* Pudvah Dep., Ex. Q, ECF No. 78-19 at 8–9.

---

[8] Defendants do not address the missing Kurta shirt in the Local Rule 56(a)(1) Statement, but do address it elsewhere in the Motion for Summary Judgment. *See* Def. LRS, ECF No. 78, Ex. 2; Memo. of Law., ECF No. 78-1 at 25–29. Plaintiff addresses the missing Kurta shirt in the additional material facts to the Local Rule 56(a)(2) Statement, Pl. LRS Add'l Material Facts, ECF No. 79 at ¶¶ 11–13, and Defendants' Reply addresses the shirt as well, Reply, ECF No. 80 at ¶ 5.

**Standard of Review**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party may satisfy his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations and internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc.*

7

*v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted).

**Discussion**

Defendants move for summary judgment on the grounds that (1) there is no evidence that Rodriguez took Plaintiff's prayer shawl or was otherwise personally involved in its disappearance; (2) there is no evidence any of the other defendants were involved in the disappearance of the prayer shawl; (3) the other defendants are entitled to qualified immunity on the failure to rectify claim; (4) Plaintiff failed to exhaust his administrative remedies with respect to the failure to rectify claim as to the other defendants; and (5) Pudvah could not have taken the Kurta shirt in retaliation for Plaintiff's filing of this lawsuit because service had not been effected at the time the shirt went missing. *See* Mot. for Sum. J., ECF No. 78 at 1; Memo. In Support, ECF No. 78-1.

*Prayer Shawl*

    *First Amendment Free Exercise Claim*

In relation to the alleged confiscation of his prayer shawl, Plaintiff alleges that defendants violated the free exercise clause of the First Amendment by confiscating his prayer shawl (or alternatively failing to assist him in locating it) resultantly impeding his ability to earnestly practice his religion.  Plaintiff alleges that the prayer shawl was confiscated due to animus defendants felt toward Plaintiff because of his religion.

"The religion clauses of the First Amendment, applicable to the states through the Fourteenth Amendment, provide that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023).  In the prison context, violations of the right to free religious exercise are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id*. (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).  A prisoner's First Amendment right to freely exercise his religious beliefs may only be infringed to the extent that such infringement is reasonably related to legitimate penological interests.  *Id*.; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987).  "In short, to assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in nature in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz*, 87 F.4th at 128 (cleaned up).

Plaintiff meets the first factor in establishing that the use of a prayer shawl is religious in nature in his scheme of beliefs and that his beliefs are sincerely held.  Courts apply a broad standard

9

when determining whether a religious belief is sincerely held. *See*, *e.g.*, *Ford v. McGinnis*, 352 F.3d 582, 589 (2d Cir. 2003) (finding protections could be limited in circumstances where "an asserted belief might be so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection" (cleaned up) (quoting *Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 834 n.2 (1989))). The Court accepts, and Defendants do not challenge, that Plaintiff is sincere in his beliefs as a member of the Moorish Science Temple of America.

However, Plaintiff's claim fails on the second factor. There is an utter dearth of evidence that any of the defendants infringed Plaintiff's religious beliefs by confiscating his prayer shawl. Although Plaintiff's prayer shawl did, indeed, go missing, the evidence does not demonstrate that the prayer shawl was confiscated by Rodriguez or anyone else. Plaintiff relies entirely on the fact that Rodriguez signed the document indicating that he was the one who shook down Plaintiff's cube. *See* Mot. for Sum. J., Ex. H, ECF No. 78-12 at 6–8. Without more, Rodriguez's mere presence in the cube does not support the inference that he confiscated the shawl.[9] To conclude otherwise would require a jury to resort to rank speculation. *See Hicks*, 593 F.3d at 166 ("[M]ere speculation or conjecture as to the true nature of the facts" will not suffice to defeat summary judgment). Furthermore, there is a policy that any confiscated property must be logged and the parties agree that no such paperwork was filed. Pl. LRS, ECF No. 79 at ¶¶ 23–25.

As to the other five defendants, there is no evidence offered tending to establish that any of them were personally involved in the alleged confiscation of the prayer shawl.[10] *See* Def. LRS,

---

[9] Rodriguez has no recollection of the shakedown or, by necessity, of seeing the prayer shawl during the shakedown. His review of video footage from the events at issue did not refresh his recollection in this regard, although he acknowledged that the video reveals that he was present in the cube. *See* Rodriguez Decl., Ex. 14, ECF No. 78-14 at ¶¶ 10–11.

[10] Although Plaintiff denies the paragraphs in Defendants' Local Rule Statement that say Plaintiff does not allege Ocasio or Williams were personally involved in the disappearance of the shawl, Plaintiff provides no support for the denial. Pl. LRS, ECF No. 79 at ¶¶ 5; 8.

ECF No. 78-2 at ¶¶ 5; 8; 12–22. Indeed, as to the other defendants, Plaintiff only alleges that they failed to rectify the situation of the missing shawl. *Id*. But on this issue, Plaintiff does not address nor dispute Defendants' argument that he did not exhaust his administrative remedies as to this claim against Witkowski, Pudvah, Ocasio, Bellemare, or Williams. *See* Exs. A-I; ECF Nos. 78-3 to 78-11; Obj., ECF No. 79. This alone is a basis to grant these Defendants' motion for summary judgment. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016).

For the foregoing reasons, Defendants are entitled to summary judgment as to Plaintiff's claim that they infringed his rights under the Free Exercise Clause of the First Amendment.

*First Amendment Retaliation Claim*

Plaintiff next alleges that Pudvah and Bellemare refused to assist Plaintiff in finding his prayer shawl in retaliation for Plaintiff filing previous lawsuits against other Department of Correction (DOC) employees. *See* IRO, ECF No. 16 at 18; Mot. for Sum. J., ECF No. 78-1 at 15–16.

"To sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020) (cleaned up). "The filing of lawsuits or prison grievances is a constitutionally protected activity." *See Crenshaw v. Herbert*, 445 F. Supp. 2d 301, 303 (W.D.N.Y. 2006) (citing *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988)).

11

The adverse action that Plaintiff allegedly suffered was Pudvah and Bellemare's failure to assist him in recovering the confiscated prayer shawl. Specifically, he alleges that he suffered this adverse action because of prior legal action that Plaintiff had taken against other DOC employees. *See* IRO, ECF No. 16 at 18; Mot. for Sum. J., ECF No. 78-1 at 15–16. Leaving aside the question of whether Pudvah and Bellemare's *inaction* could fairly be characterized as adverse action, "[t]he Second Circuit as well as other district courts within the Circuit have observed that it is difficult to establish one defendant's retaliation for complaints against another defendant." *Dixon v. Lupis*, No. 3:20-cv-1754 (VLB), 2021 WL 4391246, at *9 (D. Conn. Sept. 24, 2021) (cleaned up) (collecting cases). And "[r]etaliation claims have been dismissed when they are supported only by conclusory allegations that the retaliation was based upon complaints against another officer." *Jones v. Fischer*, No. 9:10-cv-1331 (GLS/ATB), 2013 WL 5441353, at *21 (N.D.N.Y. Sept. 27, 2013) (collecting cases). Because Plaintiff has failed to allege any non-conclusory facts establishing that Pudvah and Bellemare knew about Plaintiff's previous lawsuits and refused to help him recover his prayer shawl because of those lawsuits, the facts fail to even suggest a causal connection between Plaintiff's protected activity and the alleged adverse action. *See, e.g.*, *Jordan v. Dep't of Corr.*, No. 3:24-cv-236 (VAB), 2025 WL 1835955, at *8 (D. Conn. July 3, 2025) (dismissing a First Amendment retaliation claim because the plaintiff "failed to allege any non-conclusory facts showing that other staff even knew about the grievance filed against [other officers], let alone retaliated against [plaintiff] in response to it").

Therefore, the Court concludes that no rational jury could find that Defendants Pudvah and Bellemare violated Plaintiff's First Amendment rights by failing to assist Plaintiff in recovering the prayer shawl in retaliation for Plaintiff's filing of previous lawsuits against non-defendant DOC officials.

*Kurta Shirt*

Similar to the claims surrounding the prayer shawl, Plaintiff also claims that his rights were infringed under the Free Exercise Clause and that he was retaliated against in violation of the First Amendment with regard to the alleged confiscation of his Kurta shirt in 2021. Applying the legal standards set forth above, the Court concludes that summary judgment as to these claims is also warranted.

*First Amendment Free Exercise Claim*

Plaintiff alleges that Pudvah violated the free exercise clause of the First Amendment by confiscating the Kurta shirt, which impeded his ability to earnestly practice his religion.

Plaintiff again meets the first factor in establishing that the use of a prayer shirt is religious in nature in his scheme of beliefs and that his beliefs are sincerely held. *See*, *e.g.*, *Ford*, 352 F.3d at 589.

However, Plaintiff's claim similarly fails as to the second factor. Defendant Pudvah has demonstrated the complete absence of evidence that he infringed Plaintiff's exercise of his religious beliefs by confiscating his Kurta shirt. Although Plaintiff's prayer shirt is missing, the established facts reveal only that Pudvah packed Plaintiff's property and that the prayer shirt did not reach Plaintiff at Brooklyn Correctional Institution.[11] It is mere speculation or conjecture that Pudvah intentionally withheld the Kurta shirt from Plaintiff's property and Pudvah denies doing so. *See* Pudvah Dep., Ex. Q, ECF No. 78-19 at 8–9. Although Plaintiff alleges that Pudvah had used anti-Muslim slurs in response to Plaintiff's requests for help in obtaining the prayer shawl, *see* Am. Compl., ECF No. 15 at ¶ 44, Plaintiff relies only on "'conclusory allegations' and 'unsubstantiated speculation'" to assert that Pudvah confiscated his Kurta shirt due to religious

---

[11] The Court can only imagine the number of DOC personnel through whose hands the property travelled at both the transferring and receiving facilities, and the myriad of reasons the box might have been opened or inspected.

animus, *Nguedi v. Fed. Rsrv. Bank of N.Y.*, 813 F. App'x 616, 618 (2d Cir. 2020) (citation omitted). Such conclusory assertions are insufficient to defeat a motion for summary judgment.

*First Amendment Retaliation Claim*

Plaintiff also alleges a First Amendment Retaliation claim against Pudvah. Plaintiff alleges Pudvah took the prayer shirt in retaliation for his filing of this lawsuit regarding the alleged confiscation of the prayer shawl. Am. Compl. ECF No. 15 at ¶¶ 58–60. Although the Court has already determined that there is insufficient evidence for any jury to conclude that Pudvah, in fact, confiscated the Kurta shirt, the retaliation claim fails for an additional reason.

Although this lawsuit was commenced prior to the disappearance of the Kurta shirt, as revealed in the Court record, the electronic summons to Pudvah was issued on October 27, 2022. *See* Summons, ECF No. 18. The Kurta shirt was allegedly confiscated in September 2021. Am. Compl. ECF No. 15 at ¶ 53; IRO, ECF No. 16 at 1.[12] It is axiomatic that Pudvah could have been motivated by something that had not yet been brought to his attention. Plaintiff does not respond to this argument. Thus, no reasonable jury could conclude that the claim against Pudvah regarding the prayer shawl in this lawsuit was the motivation for Pudvah's alleged confiscation of the Kurta shirt. Therefore, summary judgment is appropriate.[13]

---

[12] Although this lawsuit had been pending since 2020, the Initial Review Order and subsequent summonses were not issued until October 2022. *See* IRO, ECF No. 16; Summons, ECF No. 18. There is no evidence or indication on the Court's docket that any of the defendants were aware of the lawsuit prior to the issuance of the Initial Review Order and subsequent summonses.

[13] Because the Court has determined that there is no genuine issue of material fact as to whether a constitutional violation occurred—none did—it need not address Defendants' alternative argument that they are entitled to qualified immunity. *Duamutef v. Hollins*, 297 F.3d 108, 113 n.1 (2d Cir. 2002) (Once a court "decide[s] that there is no constitutional violation, there typically is no need to address whether defendants are also protected by qualified immunity.").

**Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 78, is **GRANTED**.  The Clerk is directed to enter judgment for Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of December 2025.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE